or Albany United States victims as per- side, from Dayton, Hawaii, to tell us? Give a second there. Good morning. May it please the court, my name is Angela Hayden and I represent Anthony Willoughby, the appellant in this matter. Mr. Willoughby was convicted of sex trafficking of a minor in violation of 18 U.S.C. 1591. This conviction occurred after a series of improper evidentiary rulings at the trial court level. Each one standing alone, I believe, warrants reversal of the conviction. However, taken in the aggregate, most certainly warrants reversal of the conviction. First, Mr. Willoughby was not permitted to cross-examine the complainant in this matter about prior false allegations that she had made that were similar to the allegations made. What about the Cardinal case? How is this case different from Cardinal? This case is different from the Cardinal case for two reasons. One, in the Cardinal case, the constitutional issue was not raised. For the 412 issue. Let's talk about the 412 issue. Okay. And why is Cardinal different on the 412 issue? That was a specific case in which there was very little analysis done of the allegation. It should not be a blanket rule applied across the board. This case is different because it can be objectively proven that the allegation was false and therefore no sexual conduct actually occurred and 412 is not implicated. I mean, did you have, or not you personally, but did counsel at trial have some obligation to give us a proffer of some kind or something? I mean, this, the record is not, you know, doesn't have a real high level of resolution on this in terms of what exactly, what kind of testimony would have been brought in absent the district court's ruling. I can't speak to what trial counsel could have done. I'm just asking if there was an obligation. I mean, to the extent it's sort of vague and we can't really tell whether this would have been appropriate or not, do we hold that against you or the government? I don't know if you need to hold it against anyone. I think ties go to the defendant in a criminal case. I don't know about that. I mean, sometimes, you know, somebody's trying to get a certain ruling. But anyway, go ahead. Okay. If I can follow up on Judge Kessler's point, to paint this a little, page two of your reply brief, this is what it says. The defendant could have simply asked two questions. One, did you previously accuse someone you knew of sexually abusing and assaulting you? And two, did you later admit that was a lie? Now, does the record show, did the trial counsel say to the judge, this is all I want. Your judge, you're worried about this going off into some frolic and detour in this poor woman's sexual history, that's not what I'm after. This is all I want. Is there anything like that in the record? There is nothing like that in the record. Nothing that would indicate exactly what questions. That's what we love in district court. When you say, all I want is two questions, judge. Like, okay, well tell me what those two questions are. Then I can say, okay, well, this is not going to be a mini trial. I'll give you those two questions, but not a third. If that conversation occurred, it was off the record. Okay, that's fair enough. I just wanted to make sure, because when I read the reply brief, I'm like, okay, that's the kind of proffer I think that Judge Kessler's talking about. Yeah, I mean, that was a nice summary that you did in your brief. But I just didn't see it in the district court record. And I return to that, because it is simply an inquiry into a false allegation. It does not implicate any sexual conduct, especially when there's objective proof that it was false. Not only did the accused- That's cardinal. That's the thing I'm struggling with. I'm not sure cardinal's rightly decided, but- Nor am I. And it is a case without much analysis. And it also, like I said, did not get into a constitutional issue. And it can't be a blanket rule. These are very case-specific types of inquiries. Well, you keep coming back to the constitutional issue. That's a different case that has a problem for you, right? The Boggs case? Yes. Okay, so now what about that one? Okay, if we're moving on to the constitutional issue. Well, I don't care where you go. I just, I'm trying to help you, trying to help you help me. Okay, well, I maintain that 412 is not implicated, but we can move on from that. Even if 412 is implicated, there is a constitutional exception in 412. If the defendant's rights are going to be violated. And in this case, that certainly happened. Because he has a right, Mr. Willoughby has a right to cross-examine his accuser. And he was hamstrung in that effort, and- I mean, the confrontation clause doesn't say, it gives you the right to confront. It doesn't tell you the scope of the confrontation, what subject matter you get to cover. When the complainant's credibility, when the complainant's are the main evidence against the defendant. And that is certainly the case here, and the government acknowledged that in their closing. It's, do you believe her? If you do, you convict him. How can Mr. Willoughby present an adequate defense if he's not permitted to challenge that? Is this like a Delaware versus Vanna arm stall or whatever that case name was? Yes. So that you think that governs here? I do. And it's simply just, this cross would have been so critical to the defense that it's required. Absolutely, and the government argues that there are so much more evidence that this doesn't matter, this little thing doesn't matter. I mean, that's one thing you ought to address at some point. There's an awful lot of evidence against your client in this case. And I'm happy to address that now because it ties into this argument. But just let me just follow up, because again, I'm not pushing you. Well, I am pushing you. I'm just trying to make sure I understand the point. I've been pushing everybody up here. So as I understand it, Boggs versus Collins says, it's 2000, which I think is after the Delaware case, isn't it? It says, no confrontation of clause violation when 412, when rule 412 prevents a defendant from undermining a witness's, quote, general credibility by cross-examining her about past allegations of rape. So I'm just, how do you, just tell me how to get around that. Boggs versus Collins addresses a general credibility attack, OK? This is a specific. Because it's about one incident? That's the way this works? Yes. It's specific to- So if it's two or more incidents, it's general in one? A general attack on credibility is, you're a liar. A specific attack on credibility is, you accused someone of similar conduct, and you later recanted and said you lied. General credibility language is in the context of a rule 412 debate. So I don't think the thing that makes it general is you're, it's a plural situation of prior instances versus singular. Otherwise, I don't understand what general means, other than they were, it's a 412 setting, so they must have been talking about several times this happened, as opposed to once. What Mr. Willoughby needed the opportunity to do was to call into question the complainant's veracity, yes, but not only the veracity, her motives, her past conduct of lying about the very same situation that we were dealing with here. So it's not just a credibility issue, it's a motive issue, it's a pattern issue, and he should have been able to go into those issues at trial. Especially considering that, yes, there was a lot of evidence that would tend to prove that Mr. Willoughby committed the crime alleged, but the evidence doesn't mean anything without her testimony. You have to believe her to convict Mr. Willoughby. And it's so crucial, and it's so central to his ability to present a defense, that he should have been able to explore that. Okay, so now answer Judge Catholic's question about the evidence. Well, and I believe I did just now, that yes, there is a lot of other evidence, but none of that evidence means anything without her testimony. It's only her testimony that links any of that to Mr. Willoughby forcing her into prostitution, which is what he was convicted of. Those items standing alone could mean absolutely nothing. It could mean they were girlfriend and boyfriend. So on the one hand, you're saying you should have been able to show the jury that she made a false accusation to a counselor that she had a crush on or something years ago, and that discredits her story in this case. But her story in this case is corroborated, and I don't know if confirmed even is too strong a word, by the receipts from the hotel they went to, from other people's testimony about seeing her dropped off at this track place on LaGrange, by two Johns who said that they paid to have sex with her, by phone records showing the Johns calling Willoughby, by her calling from a pay phone, that record, etc. I mean, coincidence? I certainly understand where you're coming from there, but as I said, none of that means anything unless you believe her. But my point is, it makes you have to believe her, doesn't it? I don't believe her. When she said, he took me to this hotel, and there's a hotel receipt. Well, at least I would be inclined to believe that they went to the hotel, right? Right, but going to a hotel with her isn't what he was- Okay, and then she gets dropped off at the track, and she calls from there. Probably believe that, too, right? Well, there's the phone evidence of that. Being dropped off there doesn't mean that Mr. Willoughby is forcing her into a commercial sex act. Okay, other witnesses sort of talk about that, but- The witness who testified to seeing her dropped off there actually was fairly discredited on cross-examination. Okay, I mean, but how about the two Johns? I mean, now it's somebody else's testimony, right? That we'd also have to say is, it's not just SW's testimony at that point. We've got somebody else who's telling the truth. One of those Johns testified that he didn't even know the defendant, though. So we can't give that too much credibility as far as the defendant's role in any of this. In order for you to believe the defendant had a role other than knowing her and having her live in his house, you have to believe her. One of the Johns testified he came to the house, didn't he? Yes. Okay, so what, did he not know it was the defendant's house? Or did the defendant not know that the John was coming over? Well, Mr. Willoughby didn't testify, so we don't know that. That particular individual is there, other than to have sex with the complainant. How about the scripts that were found in the trash can? I'm sorry, the? How about the scripts that were found for her? You know, there were scripts that she said he wrote to, you know, for her to say when she's talking in perspective Johns. Again, you have to. Scripts were found. You have to believe. But the paper was found. Right, but you have to believe her that he wrote that for her to use to engage in. But I mean, so would the jury then have to say, I mean, the script, the piece of paper is there, so would the jury then have to say, well, maybe she wrote that out in some kind of masculine handwriting and crumpled it up and threw it somewhere with the idea that once she got back to the foster parents and talked to the FBI, the FBI would come and find that. I mean, is that the chain of inferences the jury would have? I'm not even asking you to draw that inference. I'm just asking you to understand that all of that evidence doesn't mean a thing if you don't believe her. And he was not permitted to test that. He was not permitted to attack her credibility in any way. And I understand. What I'm trying to suggest is that the corroborative value of all this other testimony would seem to me to overwhelm, potentially, the impeachment value of the testimony you say should have been permitted.  I want to give you a chance. I'm trying to give you a chance to tell me I'm wrong. And I believe, that's what I'm attempting to do, is to tell you that it all comes down to whether or not the jury believed the complainant. And the government acknowledges as much. You're right about that. Therefore, it was crucial that he be able to fully confront her, fully cross-examine her, and he wasn't permitted to do so. Would it have changed the jury's mind? We don't know that, but he deserves that answer. He deserves to know that. Okay. All right. Thank you for- Hey, thank you. We'll hear from the government. You'll get your full rebuttal. Good morning, your honors. My name is Dan Hurley, and I represent the United States. I'll pick up with the 412 issue. I think the Boggs v. Collins case absolutely takes care of the confrontation clause argument. In terms of- You said this is specific, and that refers to general credibility, just almost like reputation as a liar or something. I don't think that's right, your honor. I think that's not the correct reading of that case. And I think it's also not an accurate representation of what was going on here. This is not cross-examination about the incident in question, the facts giving rise to these charges. This is a 608 claim. In the reply brief, it's finally framed as a pure 608. Did you tell a false statement on another occasion? If yes, the jury can then infer you have a character for lack of truthfulness, and therefore, we have reason to think you're not truthful when you're testifying here. This is a totally unrelated incident. And so, I think this is exactly what Boggs v. Collins is talking about, that when it's truthfulness being shown by another incident, that's not central to the defense. Central to the defense is, it didn't happen, she's changed her story about what happened. In this case, here's some forensic evidence to prove- is probably wrong, that no one should have been thinking about this in 412, through the 412 lens, they should have been thinking only 608. I mean, 412 excludes evidence offered to prove that a victim engaged in other sexual behavior. That's just not what was going on here. This was about lying. Well, I have two responses to that one. First of all, it's not until the reply brief that the record is actually made clear that's where they wanted to go. I don't think that was clear at the district court level. I mean, you guys were the ones that introduced the idea that, oh, it's inextricably bound up with the alleged sex act itself. I mean, I don't really see the defense below trying to say we want to talk about the sex acts, they want to talk about the lie. I think the point below was simply to go into this inquiry, it is difficult to draw the line. See, I don't understand that. You guys are, I mean, I don't mean to, you know. No, that's fine, Your Honor. I mean, the prosecution argued that. And the district court seemed to agree with it. But, I mean, Ms. Hayden, in her reply brief, I mean, why isn't that, why doesn't that demonstration just show that the argument that the government advanced, the argument the district court accepted, is totally wrong? I have two things to say about that, Your Honor. First of all, because the prosecution and the district court are bound by Cardinal. And Cardinal may have been wrong. Let's forget about Cardinal for a second. Okay. If this question, the two questions in the reply brief were posed to this victim, the answer to the first question, did you ever accuse someone of sexual abuse or sexual misconduct with you? Did you accuse anyone? A truthful answer is no. Because she did not think that she accused anyone. She told some friends that she was or wasn't fooling around with the guy. And so that's not an accusation of anything. And so if they had framed this to the district court, that all they want to ask is this question and then this question, they never get out of the gate. Because the answer to the first question would have been no. They'd have to sort of try to get into it. Well, isn't it true, you know? Exactly, Your Honor. And the only way you get to the point they want to get to is, well, didn't you say you did this in the theater? Didn't you say you did this? And now we are going down that road. And that's exactly why Cardinal. Don't you think in the absence of Cardinal, they would have gotten this in? Yes. And aren't you? Well, no. I'm sorry. Aren't you a little skeptical of Cardinal? Absolutely, Your Honor. And that's why in a brief. Any other court follow Cardinal? I'm sorry? Any other court of appeals construe 412 the way Cardinal did? I believe we cited the Eighth Circuit has a couple of cases. I think one is Bartlett, and I forget the name of the other. But the Eighth Circuit has engaged in similar reasoning. There are a number of cases that have arisen on any of those cases. Go back to your answer. You initially were thinking. That's a pretty good answer. I'll give you that. You initially were saying that without Cardinal, they would have gotten this in. But then you said you had second thoughts. So go with your second thought. I do. And the reason is, without Cardinal, I don't think our 412 argument would have prevailed. Right. But there's still the 608 issue. And 608 expressly says, in the discretion of the district court. And here, the district court would have been entitled to say, this is too far afield. We're going to get into a mini trial. The jury may get confused. And we are dragging the victim through the mud. And so whether it's a pure 412 issue, the policies behind 412 are still in play. And whether we call it 608 or 403, the district court absolutely has the discretion to say, this is unrelated. This is simply, this lie could have been about anything else. How about if she, in her case, let's say the complainant, she's testifying. She did this. She made these sorts of complaints and recanted 10 times, 10 other occasions. Come in. It's a much harder argument for the government to make under 608 and 403. There's clearly some number of. Under the confrontation clause, probably, too, right? Under the Armstall? I don't know, Your Honor. And the reason is, there's two reasons. One, he was able to make this argument. The confrontation clause cases address when the defendant is completely precluded from advancing his defense. It's not, he couldn't do it as well as he wanted to. I understand that distinction. But sometimes, what's excluded is pretty darn important. I understand that, Your Honor. I apologize. But that point was made, Your Honor. There was an exhibit in this case where the victim herself talked about having told a lie. And so, if the crux of his defense is, this is someone who, on occasion, tells lies. And therefore, the jury can infer that perhaps she's lying in this case. You know, I mean, if you're the defense lawyer, it's so much more powerful to have an instance of this kind of lie. Not just, you know, she lied about her age in a job application. I understand that, Your Honor. But let's play that out a little further. At trial, let's say this court remands. And there's a new trial. They're going to ask the question, did you accuse him of misconduct? She's going to say no. They're going to get into, well, didn't you say that you'd fooled around with him? The punchline of that story that the prosecutor's going to get to get to on redirect is, is it true that when someone was falsely being accused of engaging in sexual conduct with you, you told the truth? Because that's what happened below on their version of events. When she's confronted, and it's made clear to her, this man. Wasn't it after a lie detector test? Not for him, but not her. And we don't know whether or not she was made aware of that, Your Honor. What we know is the staff interviewed her. And then she told part of the story. And then they came back another time. And she said, you know what? I need to tell you that the things I said were not true. And so the punchline of that story is, when she realizes this guy's going to lose his job, this guy may be charged, she told the truth. She did not persist in a false allegation against somebody. And so the probative value of this prior incident is actually not what it might look on the surface, because she retracted it when it looked like someone might be unfairly accused. She didn't go to the police and say, this counselor's abusing me. She was just talking among friends, her peers at the center. And when the police came to her, she said, no, that's not true. Or when the authorities came to her. And so this doesn't tell us anything about whether or not she's someone who would lie to put someone in jail or to get someone in trouble for something they didn't do. It's quite the opposite. It actually reinforces her credibility. And so because it's an unrelated incident, as this morning, I think, has demonstrated, you can't get into this without getting a long ways into, what has she said? What has she done? Who has she done it with? I think this is, even on remand, if the court goes on bonk and overrules Cardinal or finds a way to distinguish it, I think the district court, we'd still make a motion under 403 and under 608 to exclude it. And I think the district court would be well within its discretion to grant that motion. I'm not saying the court has to, but I think the court could do that. And if the court can do that, then there's no reversible error in this case. In addition, So there's no reason you should remember this. If you don't, no worries. But there is this 1-8 circuit case you cite, U.S. versus Bartlett, is it really the same as Cardinal? This kind of spirit, and no, this just kind of follows the general policy. It's really high level of generality. That's the way we read it, Your Honor. And in fact, my recollection of that case is, it's an allegation of rape. And in Bartlett and- Bartlett's an allegation of rape? That's my recollection, Your Honor. If it's not Bartlett, it's- But that makes it more of a 412-K, isn't it? And I thought the point of this case, which is funny, is it's all about lying, as opposed to the actual sexual misconduct. Well, in my recollection of the 2-8 circuit cases, one of which is Bartlett, is that there are cases involving allegations of rape- Of false allegations, is what you- Well, the trial is, the charge in those cases is rape. And the prior allegation is that the victim, either against that particular defendant in one of them, or against other persons, I think other family members, the victim had said, this person raped me, and then recanted it. And frankly, I think that's stronger, particularly if it's the same person. If the victim here had recanted and said, Willoughby never prostituted me, he had no idea, I was doing this all on my own, then I agree. It's a much harder case for the government to win on 403 or 608 grounds, because it's so close to the core of the defense that these allegations are false. But we don't have that. What we have is simply character for truthfulness, and that is ancillary to the core issue here. With respect to your question earlier, Judge Kessler, I think that when the government says there's a Sixth Circuit case that, on its face, right or wrong, gives the district court discretion to make this ruling, then if the defense has an exception or a way to frame it that's different, I think it is incumbent on them to advance that and to put that argument forward long before we get to the reply brief in the Court of Appeals. If nothing else, we would have had an opportunity to better develop what would have been asked, what would her answer have been. I'd like to ask you about the Higginbotham and Todd testimonies. Certainly, Your Honor. And just to get your, I mean, just if you could clarify the purpose for which that came in. And it might be different for the two witnesses. Well, I mean, the one witness obviously comes in because she saw the victim being dropped off on the track. Higginbotham? Yes, that's Higginbotham. And she says, I saw her being dropped off on the track. Corroborating SW's story. It's corroborating it, and she needs to say, how does she know what the track is and where's the defendant in this? And so I think that comes in, not necessarily even as 404B evidence. Both of them also do give us the fact that this defendant has, on previous occasions, sought to act as a pimp. That's, I mean, that's, that seems to be the part, at least on appeal, the defense is objecting to. They didn't really object much. They, I mean, frankly, as a district judge, if a defense attorney says to me, I don't really have a good argument on that, but I really want to talk about the drugs, as a district judge, I would hear that as, go ahead and let that in, but let's talk about the drugs. But I guess, you know, and I understand fully your point there, just, but setting that aside, I mean, what is the purpose, then, of the, he tried to pimp, you know, be a pimp for me? Here's the way the case played out. There's no dispute that she lived with him, and the defense attorney says that in opening statements. She's there for four to six weeks. Her testimony and the testimony of the two Johns, who walked into federal court and said, yeah, I paid for sex, and I called this phone number, the defendant's phone number, to do so, they can't dispute that. There's just no reason for them to say that if it's not true. And so the only issue here is when the defendant is recruiting her, when he's harboring her, when he's maintaining her, when he's transporting her, does he know that the reason she's going to LaGrange, the reason she's going to these men's houses, when he's keeping her there, does he know that this is so that she will be engaging in commercial sex acts? And will he be causing her to engage in these commercial sex acts? And so this trial ultimately was about his knowledge of where's she going, what's she doing, what's going on there, and what's his intent in this? Why is he recruiting her to live with him? Why is he taking her to these places? Who's causing her to engage in commercial sex acts? And the answer is the defendant. Now, how does he know this, and how do we know that that's his intent? Because he's tried to do similar things in the past. How would this usage differ from just straight up propensity? You know, once a pimp, always a pimp. He pimped before, he's doing it again, ladies and gentlemen. Because this court has said that prior specific acts that establish an intent or particular knowledge is admissible. Which case, because you know, we have some... You've got a lot of conflicting cases. Hard to reconcile authority. I understand that, Your Honor, but I think that there are a number of cases in the drug distribution context where this court has found intent to distribute on one occasion is... I think I know one or two you're thinking of, but how about the Bell case? Can you pass the Bell test? Well, first of all, I don't know that I need to pass the Bell test because I passed the Benton test. And Benton was before Bell. All right, but let's say, let's talk about the Bell test. But if this court wants to apply the Bell test, I think we can pass the Bell test. And the reason is the Bell standard is, is the prior conduct sufficiently analogous so that we can draw this inference? And Bell talks about, is it the same or similar scheme? Now, I'm not sure there's clearly a line there that if it's too close, now we're in race jest die, and this is really the same conduct. But what did he do with Renee Todd? He tried to pimp her out and he had sex with her. And what did he do here? He tried to pimp this woman out and he had sex with her. With Higginbotham, he took her to the track. What did he do here? He took SW to the track. He talked to SW about taking her to Detroit. What did he do with Higginbotham? He took her to Detroit. He talked about taking her other places. SW said he talked about taking her to Florida, to Philadelphia. That's exactly the exact same conduct and even some of the same places that Higginbotham talked about, going to Detroit to walk the track. And so this is absolutely probative of his intent and that he knew what was going on. I see that my time is up, unless the panel has further questions. Thanks for your argument, we appreciate it. Ms. Hayden. I'd like to just address the 404B issue with Ms. Higginbotham and Ms. Todd. Regarding Ms. Higginbotham, granted she did give the testimony regarding seeing the victim dropped off on the track. However, that is not what the defendant has an issue with. The defendant has an issue with this pimp testimony.  And despite the assertion that Ms. Higginbotham by the government of the use for that evidence. I submit that's just lip service because if you look at the closing argument of the government, what did they use the evidence for? What was it actually used for? And pimp, pimp, pimp. He was a pimp then, he's a pimp now. Look at this pimp. That was the closing argument and that relied heavily on the testimony of Ms. Higginbotham and Ms. Todd. It was used for an improper purpose and that is the issue here. Is the prejudicial impact of this testimony diminished by the fact that he had these rap lyrics that described himself as a pimp, arguably? I don't believe so. I mean, let's be honest. How many rappers rap about pimping, being a pimp? That doesn't make them a pimp. It doesn't mean they were a pimp. I have no knowledge of that. I mean, it just seems. We won't be taking judicial notice of that. I'm not going to judicial notice on that. Your thing about just mentioning pimp over and over, I mean, would it really have made you feel better if the government had been a little more specific? He was a pimp that always went to the track. He was a pimp that always went to the track. I mean, then he's using it. Your point is they get it in one way. I get your point. They get it in one way, not for propensity, then they start talking about it in a propensity way. I mean, first of all, that's a good time for an objection, would be my first thing to say. But my second of all, I think had I been defense counsel, I'm just not sure I would have objected, because then they say, they kind of make it worse. They say, pimp that had the exact same scheme every time. So they keep getting to repeat pimp, and how much have things improved? But it isn't the same scheme, and that's the other point, is that Ms. Todd never worked for, she didn't testify that she worked for Mr. Willoughby. So obviously, he's not forcing people into prostitution, or she, too, would have been forced into prostitution. She walked freely about. She knew him. She had a relationship with him, but she was not pimped out by him. Ms. Higginbotham also, not even remotely the same situation. Even by her own testimony, she left when she wanted to leave. He didn't keep her there. He didn't force her to do anything. So it's not the same. It's not even remotely the same as what the complainant in this case is alleged happened. So it has very little probative value. And it's certainly, what little it has is outweighed by the prejudice to the defendant in being able to say, pimp, pimp, pimp, over and over again. I don't think we have any other questions, but both of you have been really helpful. Great briefs, great arguments. Thanks for answering our questions. And thank you, Ms. Hayden. It looks like you're CJA. So we know how little you get compensated for this, but Mr. Willoughby was lucky. Thanks for doing this. Appreciate it. OK, the case will be submitted, and the clerk may call.